## JOHN GOOCH *vs.* JESSE STEPHENSON.

If a statute give merely a new remedy, where one before existed at common law, it is cumulative ; and the party injured is at liberty to pursue either.

If a statute give the same remedy, which the common law does, it is merely affirmative, and the party has his election which to pursue.

But if a statute deny or withhold the remedy, which before existed at common law, the common law right ceases to exist.

Since the *stat.* of 1834, *ch.* 137, concerning pounds, &c., where parties are owners of adjoining improved lands, and the fence between them is defective and insufficient ; and there has been no division of fence, or assignment of distinct portions thereof to each, by the fence-viewers, or by agreement of the parties, or by prescription ; no action of trespass can be maintained by either of such owners against any owner of cattle lawfully on the opposite side of such fence, and breaking into the inclosure through such insufficient fence.

THIS was an action of *trespass, quare clausum,* on the trial of which, before *Weston C. J.,* it appeared, that the plaintiff and defendant were owners of two adjoining fields, and that the separating fence between the fields was defective and ruinous ; and that there had been no assignment of the portion to be made by each by prescription, by agreement of the parties, or by the fence-viewers. The defendant's cattle, by reason of the insufficiency of the fence, escaped from his close into that of the plaintiff, and were there doing damage. The plaintiff became nonsuit, and it was agreed, that if upon the facts, the Court should be of opinion, that the action could be maintained, the nonsuit was to be set aside, and the defendant was to be defaulted.

*Chase,* for the plaintiff.

The plaintiff claims to maintain his action by virtue of the principles of the common law. The rights and liabilities of the parties are not affected by any of the provisions of the statute. The plaintiff supports his claim upon the principles of the cases, *Rust* v. *Low,* 6 *Mass. R.* 90 ; *Stackpole* v. *Healey,* 16 *Mass.*

*R.* 33; *Heath* v. *Ricker*, 2 *Greenl.* 72 and 408; and *Little* v. *Lothrop*, 5 *Greenl.* 356.

In *Little* v. *Lothrop*, decided in 1828, this principle is laid down. "Every person may maintain trespass against the owner of cattle, unless such owner can protect himself by the provisions of a statute, or by a written agreement, or by prescription." And again, "When there is no prescription, agreement or statute assignment, no tenant is bound to fence against an adjoining close, but in such case, there being no fence, each owner is bound at his peril to keep his cattle on his own close." These decisions settle beyond question, that the common law was not affected by any provisions of our statutes.

The only question then in this case is, whether the *stat.* of 1834, *ch.* 137, repeals the common law, which requires every man to keep his cattle on his own close, where the adjoining owner or occupant is not by law obliged to keep division fences. When the statute was made, the common law on this subject was well settled and understood. The object of the law of 1834 was not to affect those principles in relation to the rights and liabilities of adjoining proprietors of improved lands, but to simplify and improve the remedy by impounding. It refers only to cases where there is a legal division fence between the parties, and not to those cases, where there is no fence in fact, or none established by force of law, between the closes. To show that his proposition was tenable, the counsel compared and commented upon the several statutes in relation to impounding and fences, and particularly examined the several provisions of the act of 1834. He also commented on the decisions upon the subject. He said, that if the construction contended for by him was not the true one, it was a little remarkable, that the act does not mention the case, where there is no division fence between adjoining proprietors. The act gives an action of trespass only, *where there is a* "*legal and sufficient fence*," but withholds it where the cattle break through where the fence on the legal line is not according to law. The legislature could not have intended, that a party should be liable to have his crops destroyed without remedy, and that too before he could possibly get on the fence-viewers, and have the line divided, and have a time fixed for one party to make the

fence, and in case of his declining, time to have the other party actually make it. But there are very many cases in the newly settled part of the State, where there are no fence-viewers, and where there is no mode of enforcing a division of fence ; and where if there was, it would be ruinous to the occupant to be compelled to fence in all his land, where his cattle ranged, but comparatively easy to fence in his improved land.

The statute gives to either party the right to change the relations established between them by the common law, by taking the steps pointed out by it ; and until that is done they must abide by the common law. The will of the legislature should be expressed in extremely clear terms, before the Court should believe they intended to invade the favourite rule of law and justice, " sic utere tuo ut alienum non laedas"; or the not less important one, " that there is a remedy for every wrong." And if the Court should be constrained to come to the conclusion, that the legislature did so intend, they should carefully enquire, whether their constitutional limits were not passed.

In construing statutes the whole subject matter should be considered. General terms and expressions of a statute should be restricted and limited in construction, so as to make them conformable to other well settled principles of law, and other constructions of like statutes. 3 Mass. R. 296 ; 4 Mass. R. 462 ; 1 Pick. 254 ; 7 Mass. R. 306 ; 5 Mass. R. 380 ; 8 Mass. R. 472 ; 2 Cranch, 358. It is always to be presumed, that the legislature intend the most beneficial construction of their acts, when the design is not apparent. 4 Mass R. 537. In some cases the letter of a statue may be restrained by an equitable construction, and in others enlarged. 12 Mass. R. 383. An act which is to take away or clog a remedy which a party has by the common law, shall not be taken away by equity. 19 Viner, 514. A statute should be so construed, that whatever the words, it shall conform to reason and justice. 7 Johns. R. 477. If made in derogation of the common, it should be construed strictly. 15 Mass. R. 205. Where rights are infringed, the legislative intention must be expressed with irresistible clearness to induce the court to yield to it. 1 Condensed R. 425 ; 2 Cond. R. 380 ; 2 Cranch, 400. In giving a construction to a statute every part of it should

be taken into consideration. 2 *Cranch*, 33 ; *ibid.* 10 ; 1 *Wheat.* 115. When the law antecedent to the revision of a statute is settled, the mere change of phraseology shall not be deemed to change the law. 2 *Caine's Cases in Error*, 143 ; 4 *Johns. R.* 359 ; 9 *Johns. R.* 507. A thing which is within the intention of the makers of the statute is as much within the statute, as if it were within the letter ; and a thing which is within the letter is not within the statute, unless it be within the intention of the makers. 15 *Johns. R.* 358 ; 3 *Cowen*, 89 ; 9 *Cowen*, 506.

*Downes*, for the plaintiff, remarked, that *Rust* v. *Low*, and the other cases of similar tendency were very good law as the statutes stood, when those decisions were made. So too the very numerous cases cited upon the construction to be given to statutes, and the rules stated as the results of them, may be good law ; and still the plaintiff have no cause of action. But the legislature have the power to alter the common law on this subject whenever they please, and in such manner as they choose. It is proposed only to give a statement of what has been done. It was decided in *Rust* v. *Low*, that by the common law every man must keep his cattle on his own land, and is liable to damage if they stray upon that of his neighbor ; and that the act of 1788 did not alter that law, where the cattle were lawfully on the adjoining close, and no fence according to law. This was in 1809.

In 1819, in *Stackpole* v. *Healey*, the Court decided, that closes adjoining highways are left as at common law, and therefore that the owner of land thus situated is not obliged to fence against cattle running at large. And in 1821, after this decision, our legislature re-enacted the statute of 1788, but with an additional provision, that no action should be maintained, where cattle break into a close from the commons or highways in a part where the fence is not made according to law. In *Heath* v. *Ricker*, it was decided, that the right to impound and sell beasts, under the statute, was given only in cases where the injury was done to lands enclosed with a legal and sufficient fence. The next case, *Little* v. *Lothrop*, was decided in 1828, and it was there held, that where the lands of adjoining occupants are not separated by a

Gooch *v.* Stephenson.

lawful fence, each is bound to keep his cattle on his own land at his peril, according to the principles laid down in *Rust* v. *Low*.

In this state of the law the statute of 1834 was enacted. This statute repeals the statute of 1821, and all acts and parts of acts inconsistent with its own provisions. This statute re-enacts the provisions of those of 1788 and of 1821, so far as it respects lands inclosed with a legal fence. But it has a provision, which was contained in no previous statute, that no action shall be maintained, nor beasts be impounded, for a breach over or through an insufficient part of the fence. This extends the provisions of the statute of 1821, to all cases whatsoever of adjoining lands. Therefore the action cannot be maintained.

The action was continued for advisement, and the opinion of the Court was afterwards drawn up by

Weston C. J. — As the law stood, prior to the separation, this action was maintainable. The cases of *Low* v. *Rust*, and of *Stackpole* v. *Healey*, cited for the plaintiff, are decisive upon this point. But the law as it then stood, has been changed. The *statute* of 1821, *revised laws, ch.* 128, § 6 provided, that no action of trespass, *quare clausum fregit*, should be maintained against the owner of neat cattle, breaking into a close from the high way or commons, where the fence of such close was not good and sufficient, provided such neat cattle were, at the time lawfully going at large on such commons or highways. The law however was left unchanged, with regard to cattle escaping from adjoining fields ; and this action might still have been maintained at common law, notwithstanding the statute of 1821. *Little* v. *Lothrop*, 5 *Greenl.* 356. Then came the statute of 1834, *ch.* 137. The third section provides, that no action of trespass shall be maintained against the owner of cattle, breaking into the inclosure of another, through an insufficient fence ; such cattle being lawfully on the opposite side thereof. In this predicament stands the case before us. The defendant's cattle, being lawfully upon the opposite side of the fence, through the insufficiency thereof, broke into the plaintiff's inclosure.

We have been referred to many cases, illustrating the principles upon which statutes should be construed, to which there is

very little occasion to resort. The statute in question is too plain, direct and positive, to leave room to escape the force of its terms, by any technical rules of construction. If a statute gives merely a new remedy, where one before existed at common law, it is cumulative; and the party injured is at liberty to pursue either. And where a statute gives the same remedy, which the common law does, it is merely affirmative; as in that part of this section, which allows the party injured to impound or maintain trespass. But this does not affect or qualify the prohibitory part, which denies and withholds the remedy, under certain circumstances, where it existed before at common law. It has been insisted that justice and the security of rights, is best promoted by maintaining the remedy, as it before existed; but that is an argument, which addresses itself to the legislative power, and not to the judicial, whose duty it is to ascertain and give effect to what the legislature, within the limits of the constitution, have declared. If a party will surround his inclosure with a sufficient fence, and the cattle of others break in upon it, the law affords him adequate remedies. The inhabitants of unincorporated places, may not have the full benefit of the laws, in relation to partition fences. They may have to rely upon such equitable arrangements as may be dictated by the mutual interests of adjoining owners. The plain provisions of a general law are not to be defeated, or explained away, because they may operate less favorably upon a small portion of the community.

It is urged, that if the statute, upon which the defendant relies, forbids the remedy sought in this case, that part of it is unconstitutional. If it had authorized one man to interfere with the lands of another, it might be liable to this objection. But a party is liable to an action, who enters himself upon another's grounds, or who turns on his cattle. And if cattle, lawfully on adjoining lands, stray where they have no right to go, they may be driven off. Or the owner of land may exclude the cattle of others, by sufficient fences, and if these are violated, he may seize and impound cattle doing damage, or maintain trespass against their owners. It was for the legislature to determine what protection should be thrown around this species of property; What vigilance and what safeguards should be required at the hands of the

owner ; and where he might invoke the aid of courts of justice. They have no power to take away vested rights ; but they may regulate their enjoyment. Lands in this country cannot be profitably cultivated, if at all, without good and sufficient fences. To encourage their erection, it is undoubtedly competent for the legislature to give to the owners of lands thus secured, additional remedies and immunities.

We perceive nothing in the law, which violates or impairs the constitution ; and, in our judgment, the plaintiff's action cannot be maintained.

*Nonsuit confirmed.*