THE CITY OF COLUMBUS, Appellant, vs. THE TOWN OF COLUMBUS and others, Respondents.

*May 7 — May 24, 1892.*

*Municipal corporations: Control of cemeteries: Constitutional law.*

Where one municipality holds the mere naked title, without any beneficial interest therein, to land in another municipality, in trust for the beneficial use and enjoyment of the inhabitants of both municipalities for a specified purpose, the legislature may enact that the municipality in which the land is located shall have the exclusive care and management thereof for the beneficiaries. Thus, ch. 266, Laws of 1876 (R. S. sec. 1439),— providing that when any town cemetery is or shall become embraced within the limits of a city, the duties and powers of the town board relating thereto shall be exercised by the common council of the city,— is a valid enactment.

APPEAL from the Circuit Court for *Columbia* County. By ch. 57, Laws of 1874, the city of *Columbus,* consisting of territory taken from the town of *Columbus,* was organized, with the usual powers of such municipal corporations. Included within such territory is a town cemetery, which the town of *Columbus* had theretofore acquired, partly by dedication and partly by purchase. It contained about ten acres of land, the legal title to which was in the town. The city charter provided that the right of the citizens of the town and city respectively to the use of such cemetery for burial purposes shall not be impaired, and that the citizens residing in the city " shall always have and enjoy the same rights and privileges in said cemetery as the citizens of the town of *Columbus,* and the said city shall contribute its just share of the expenses of maintaining said cemetery." Laws of 1874, ch. 57, subch. 13, sec. 19. Ch. 266, Laws of 1876, provides, by way of amendment to the statutes concerning town cemeteries, that, " whenever any such town cemetery is or shall become embraced within the limits of any city,

the duties and powers of the town board relating to such cemetery shall be exercised by the common council of such city, and the conveyances of lots shall be executed by the mayor thereof in the name of the town, and attested by the city clerk; but the right of burial in such cemetery shall not be changed nor impaired." R. S. sec. 1439. The common council of the city attempted to exercise the powers and perform the duties in respect to the cemetery expressed in ch. 266, Laws of 1876, but were prevented to some extent from doing so by the active opposition and resistance of the town authorities.

The foregoing facts are practically undisputed. Thereupon this action in equity was brought by the city against the town and its supervisors, to restrain them from interfering with the control and management of the cemetery by the common council of the city. The complaint contains an elaborate history of the dealings by the city and town officers, respectively, with the cemetery, from the organization of the city in 1874, down to the time this action was commenced in 1891, and the struggles of each, from time to time during that period, to maintain or obtain control thereof. A preliminary injunction was granted by a court commissioner, *ex parte*, restraining the town as prayed in the complaint.

The town answered the complaint, going still more extensively into the history of the controversy, and denying many of the averments of fact in that behalf in the complaint. The answer also contains a counterclaim, repeating the averments in the defensive portion thereof, and demanding the same relief against the city which the city demanded against the town. The city interposed a reply to such counterclaim, traversing, with much particularity of statement, many of the averments of fact therein concerning the acts and doings of the town and city authorities. This closed the somewhat voluminous pleadings.

The town then obtained an order to show cause why the preliminary injunction against it should not be dissolved, and an injunction against the city granted as prayed in the counterclaim. The order was based upon the pleadings and certain affidavits served with the order. On the hearing of the order to show cause several affidavits were read on behalf of the city, and the court permitted additional affidavits to be read on behalf of the town. These affidavits cover over one hundred regulation pages in the printed case. They relate mainly to the controversy between the city and town authorities for the control of the cemetery, which controversy occupies so large a space in the pleadings.

The circuit court found as a fact that the town never surrendered its right to manage and control the cemetery, and never conceded that the city had such right, and for that reason alone granted the motion of the defendants by dissolving the injunction obtained by the city, and granting an injunction against the city and its officers restraining them from interfering with the management and control of the cemetery by the town and its officers, but saving the rights of burial therein to the inhabitants of the city, and the right to enforce therein reasonable police regulations of the city. The city appeals from the order of the circuit court in that behalf.

For the appellant there were briefs by *Geo. W. Bird* and *A. G. Cook,* and oral argument by *Mr. Bird.* They argued, among other things, that the lands were acquired for a specific public purpose, could be devoted to no other, and the town had no interest in them except as the representative and trustee of the public to apply them to that purpose. Act of February 18, 1841, for the government of towns and counties, ch. 2, part 1, sec. 1; Id. ch. 2, part 2; R. S. 1849, ch. 12, sec. 1; Laws of 1857, ch. 13; R. S. 1859, ch. 68, secs. 17–24; Laws of 1876, ch. 266; R. S. 1878, secs.

1438–40, 1445; *Trustees v. Hoboken*, 33 N. J. Law, 13; *Darlington v. Mayor*, 31 N. Y. 164, 193, 197; *Stockton v. Newark*, 42 N. J. Law, 531; *Montpelier v. East Montpelier*, 27 Vt. 704; *In re St. Pancras Burial-Ground*, L. R. 3 Eq. 173; *Reed v. Stouffer*, 56 Md. 253; *Woodlawn Cem. v. Everett*, 118 Mass. 354; *Gilman v. Milwaukee*, 55 Wis. 328; *Trustees v. Walsh*, 57 Ill. 363; *Sohier v. Trinity Church*, 109 Mass. 1; *Dwenger v. Geary*, 113 Ind. 106; *Page v. Symonds*, 63 N. H. 17; *Patterson v. Patterson*, 59 N. Y. 584. Where property is acquired and held for a specific public purpose, to which it is unalterably devoted, it is competent for the legislature to change the officers or agents charged with its control, and designate others as the representatives of the public to apply the property to such purpose. *Allen v. Macy*, 109 Ind. 559; *Carson v. State ex rel. Hanover*, 27 id. 465; *Leesburg v. Plain*, 86 Ind. 582; *McGurn v. Board of Education*, 133 Ill. 122; *Philadelphia v. Fox*, 64 Pa. St. 169. Ch. 266, Laws of 1876, confers upon the city, and charges it with, the care, management and control of the cemetery, and fully authorizes it to exercise all powers relating thereto. It does not impair the obligation of any contract, nor disturb or interfere with any vested rights. *Philadelphia v. Fox*, 64 Pa. St. 169; *People ex rel. Springfield v. Power*, 25 Ill. 187; *Willimantic School Soc. v. First School Soc.* 14 Conn. 457; *Lake View v. Rose Hill Cem. Co.* 70 Ill. 191. Ch. 266 may be sustained as an exercise by the legislature of the police power of the state. Cooley, Const. Lim. 704; *Donnelly v. Decker*, 58 Wis. 461; *Comm. v. Tewksbury*, 11 Met. 55; *Comm. v. Carter*, 132 Mass. 12; *Boston & Maine R. Co. v. Comm'rs*, 79 Me. 386; *Regents v. Williams*, 9 Gill & J. 365; *Kincaid's Appeal*, 66 Pa. St. 411; *Windt v. German Ref. Church*, 4 Sandf. Ch. 471; *Richards v. N. W. Prot. Church*, 32 Barb. 42; *Lake View v. Rose Hill Cem. Co.* 70 Ill. 191; *Campbell v. Kansas*, 10 L. R. A. 593.

For the respondents there was a brief by *John S. Maxwell* and *Olin & Butler*, and oral argument by *Mr. Maxwell* and *Mr. J. M. Olin*. They contended, *inter alia*, that the land was purchased by the town in fee, with no condition as to its use annexed to the grant; and there is nothing in the circumstances of its acquisition or its subsequent use which unalterably devotes it to cemetery purposes. On the contrary, ample powers were and are conferred upon the town to dispose of the property, or such part of it at least as has not been actually appropriated for burial purposes. *Milwaukee v. Milwaukee*, 12 Wis. 93; *Beaver Dam v. Frings*, 17 id. 398; *Konrad v. Rodgers*, 70 id. 492; *Gilman v. Milwaukee*, 55 id. 328. But assuming that the property was unalterably devoted to cemetery purposes, yet the town board might, by its management thereof, make the property pay' or assist in paying any debts which it owed upon the property, whether incurred in the purchase or improvement of the grounds; or the revenue derived from the sale of lots, or a part thereof, might lawfully be applied towards reimbursing the town for the money already expended in the purchase of the grounds. And the town board might, as it in fact did, lease that portion of the tract which had not been platted or appropriated to use for burial purposes, and thus obtain a revenue from it which would go into the treasury of the town. *Bell v. Platteville*, 71 Wis. 139, and cases cited; *Stone v. Oconomowoc*, id. 155; *Bolling v. Petersburg*, 8 Leigh (Va.), 224. Thus the placing of the control of the property in the hands of the city deprives the town, and the inhabitants of the town, of a vested pecuniary interest in the property.

The cemetery remained, after the incorporation of the city, the same as before, the property of the town, notwithstanding the whole of the cemetery fell within the corporate limits of the city. *Windham v. Portland*, 4 Mass. 384, 389; *Laramie Co. v. Albany Co.* 92 U. S. 307; *Mont-*

*pelier v. East Montpelier*, 29 Vt. 12, 67 Am. Dec. 748, 752; *Hampshire v. Franklin*, 16 Mass. 76, 86; *North Yarmouth v. Skillings*, 45 Me. 133, 71 Am. Dec. 530, 534; *Milwaukee v. Milwaukee*, 12 Wis. 93; *Goodhue v. Beloit*, 21 id. 636; *Depere v. Bellevue*, 31 id. 120; *Schriber v. Langlade*, 66 id. 616; *Board of Health v. East Saginaw*, 45 Mich. 257; *Winona v. School District*, 40 Minn. 13; *Greenville v. Mason*, 53 N. H. 515; *Union Baptist Soc. v. Candia*, 2 id. 20; *South Hampton v. Fowler*, 52 id. 225, 230; *Heizer v. Yohn*, 37 Ind. 415; *Reckert v. Peru*, 60 id. 473; *Whittier v. Sanborn*, 38 Me. 32; *Veazie v. Howland*, 47 id. 127; *White v. Fuller*, 38 Vt. 193, 200; *Parish v. Gaddis*, 34 La. Ann. 928, 931.

Ch. 266, Laws of 1876, is therefore unconstitutional. See, besides cases above cited, *Grogan v. San Francisco*, 18 Cal. 590, 612; *People ex rel. Le Roy v. Hurlburt*, 24 Mich. 44, 9 Am. Rep. 103, 112; *People ex rel. Board v. Detroit*, 28 Mich. 228, 15 Am. Rep. 202; *Louisville v. President, etc.* 15 B. Mon. 642; *New Orleans, M. & C. R. Co. v. New Orleans*, 26 La. Ann. 478; *Trustees v. Mayor*, 13 Smedes & M. 645; *Trustees v. Bradbury*, 11 Me. 118, 26 Am. Dec. 515, 518; *Mayor, etc. v. President, etc.* R. M. Charlton (Ga.), 342; *Bailey v. Mayor, etc.* 3 Hill, 531; *Atkins v. Randolph*, 31 Vt. 227; *State ex rel. McCurdy v. Tappan*, 29 Wis. 664, 673, 681; *State ex rel. Board v. Haben*, 22 id. 660, 665; *Trustees v. Foy*, 3 Am. Dec. 672; *Hampshire v. Franklin*, 16 Mass. 76, 83; *Trustees v. Burt*, 11 Vt. 632, 641; *Webb v. Mayor*, 64 How. Pr. 10; *Benson v. Mayor*, 10 Barb. 223; Cooley, Const. Lim. (3d ed.), 290–293; 1 Dillon, Mun. Corp. (3d ed.), secs. 66–68, and note.

Lyon, C. J. It seems to us quite immaterial whether the city or the town has succeeded in maintaining the control of the cemetery in question. Ch. 266, Laws of 1876 (R. S.

sec. 1439), by its terms gives the common council of the city all the powers, and imposes upon it all the duties, in respect to the cemetery, conferred and imposed upon the town board by the statutes in force when that chapter was enacted. That is to say, ch. 266 attempts to give the control and management of the cemetery exclusively to the city authorities, subject to the rights of burial therein by the inhabitants of the town. If that statute is a valid enactment, the city authorities are exclusively entitled to exercise such control and management, even though such right was never recognized by the town or asserted by the city. Hence the controlling question is whether ch. 266 is a valid law, and not (as the circuit court held) whether the town ever surrendered to the city the management and control of the cemetery.

The question thus to be determined is not a difficult one. The town holds the naked legal title to the cemetery grounds in trust for the inhabitants of the town and city, exclusively for burial purposes. The town has no beneficial interest whatever in the property. It is powerless to convey it for any other than burial purposes, without special legislative authority, or to appropriate to its own use any portion of the proceeds of sales of burial lots. Such proceeds must all be used to pay for the cemetery grounds, and to defray the expenses of caring for, fencing, and embellishing the same. R. S. secs. 1438–1440.

Because the town has no beneficial interest in the property, and because the use for which it holds the legal title thereto in trust is purely a public use, the fact that it holds the legal title is no impediment to the exercise by the legislature in its discretion of the power to change the trustee, saving to the inhabitants of the town and city all their beneficial interests and rights in the trust property. The act of 1876 merely changes such trustee, and saves all the rights

of the beneficiaries under the trust. It is therefore a valid law. The authorities cited by counsel for the city in support of the power of the legislature to change the trustee in such a case fully sustain it.

Counsel for the town place much reliance upon the case of *Milwaukee v. Milwaukee*, 12 Wis. 93, as holding the opposite doctrine. We do not think it sustains the position. In that case the town held the legal title to forty acres of land within its limits "in trust for the sole use and benefit of said town forever." A conveyance in fee of land to A. in trust for the sole use and benefit of A. is necessarily a conveyance to him of the absolute title in fee. Hence the absolute title in fee to the land was in the town so far as the town was competent under the statutes to take and hold the same. This forty acres was afterwards detached from the town, and made a part of the city of Milwaukee, and the city took actual possession thereof. The town brought ejectment to recover the land, and succeeded in the action. This court affirmed the recovery. The real controversy was necessarily confined to the questions of legal title and right of possession, which are purely proprietary and therefore vested rights. The case did not involve the question we have in the present case of the power of the legislature, where one municipality holds the mere naked title, without any beneficial interest therein, to land in another municipality, in trust for the beneficial use and enjoyment of the inhabitants of both municipalities for a specified purpose, to enact that the municipality in which the land is located shall have the exclusive care and management thereof for the beneficiaries. We do not think that case negatives the power of the legislature to enact ch. 266, Laws of 1876.

It must be held, therefore that ch. 266, Laws of 1876, is a valid law, and that under it the common council of the city of *Columbus* is vested with the management and con-

trol of the cemetery in the interest and for the beneficial use of the inhabitants, both of the town and city.

*By the Court.*— The order of the circuit court dissolving the preliminary injunction of the city and granting a similar injunction against the city and its officers is reversed, and the cause will be remanded for further proceedings in accordance with this opinion. The printed case is unnecessarily voluminous. In the adjustment of costs the clerk will only allow for printing one hundred pages thereof.