## STEUBEN TOWNSHIP OF STEUBEN COUNTY *v.* LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY.

[No. 8,550. Filed April 15, 1915.]

1. DRAINS.—*Establishment.—Benefits.—Assessment Against Township.*—The statutory rule since the enactment of the drainage act of 1885 (Acts 1885 p. 129, §9), has been to assess the benefits accruing to a public highway on account of the establishment of public drainage against the proper township, so that it must be presumed that any expense based on benefits to a public highway resulting from the construction of a drain, and an arch and re-

taining wall as a part thereof, was incurred and paid by the township, and hence the county would have no right to recover damages to the highway based upon the payment of such benefits. p. 533.

2. BRIDGES.—*Ownership.*—*Property Loss.*—Strictly speaking, local political corporations do not have a proprietary interest in public roads or in a bridge while performing its functions as such as a part of a public highway over a watercourse not forming a part of either a township or county line, but such ownership is in the State; hence the injury resulting to a township or county from the destruction of an arch and retaining wall, which performed the functions of a highway bridge, was not a property loss upon which a recovery by either could be predicated. p. 534.

3. HIGHWAYS.—*Ownership.*—*Duty to Repair.*—The law contemplates that all public highways be kept in repair for public use, and, while they are not owned locally, the State has in each instance charged some governmental subdivision with the duty of making repairs; and, since the duty to repair is coextensive with the injury, the State as technical owner incurs no loss, so that right of recovery for such injury would seem to be, *prima facie* at least, in the political corporation charged with the duty of making repairs. p. 534.

4. BRIDGES.—*Destruction.*—*Action.*—*Right to Sue.*—In view of the statutory provisions relating to the repair of highways and bridges, where a bridge is damaged or destroyed so as to render necessary its repair or restoration the duty to that end rests *prima facie* upon the authorities of the township in which the bridge is located; but when the estimated expense exceeds the available means of the township authorities the duty to make the repairs rests upon the county. p. 535.

5. HIGHWAYS.—*Damages.*—*Right to Recover.*—In case of damage to an ordinary highway, the township is the proper party to recover therefor, while the cause of action is in the county where the injury is to a free gravel, macadam or turnpike road. p. 538.

6. BRIDGES.—*Destruction.*—*Injury.*—*Right of Action.*—Where there has been a negligent injury to or destruction of a bridge, the township may at once maintain an action to recover damages therefor, provided there has been no prior determination that the duty to repair or restore rests upon the county. p. 539.

7. BRIDGES.—*Destruction.*—*Injury.*—*Right of Action.*—Where a bridge was injured, and the township took no steps to repair it, and the county commissioners assumed charge of the work, and caused repairs to be made and paid the expense out of the county funds, the county alone could sue for the damages. p. 539.

From Dekalb Circuit Court; *Frank M. Powers,* Judge.

Action by Steuben Township of Steuben County against the Lake Shore and Michigan Southern Railway Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Best & Yotter,* for appellant.

*Walter Olds,* for appellee.

CALDWELL, P. J.—Appellant brought this action in the Steuben Circuit Court August 31, 1910, to recover damages for certain injuries to a public highway in appellant township, alleged to have been caused by the wrongful conduct of appellee. In the Dekalb Circuit Court to which the cause was sent on a change of venue, appellee withdrew all paragraphs of answer except the third. Appellant's demurrer for want to facts, filed to said third paragraph was overruled, whereupon judgment was rendered against appellant on its refusal to plead further.

The averments of the complaint are to the effect that in the year 1900, in a proceeding to that end brought under the statute, a public ditch was established in Steuben County on petition to and by order of the Steuben Circuit Court; that the ditch extends westward through said township intersecting a public highway therein at a point near the village of Pleasant Lake, and also through certain grounds owned by appellee, and also through its right of way, which grounds and right of way are immediately west of the highway; that as constructed a section of the ditch commencing 185 feet east of the west line of the highway and extending westward to the west line, consisted of a concrete arch twelve feet wide at the bottom and nine feet high, and placed so that the bottom thereof was about twenty-two feet below the surface of the highway where it crossed the same; that as a part of the ditch construction, concrete retaining walls ninety feet long and thirty-six inches thick, and extending below the bottom of the ditch and above the surface of the highway, were built along the west side of the highway, and

joined to the west end of the arch. It is alleged that appellee in the ditch proceeding, to which it was a party, and by arrangement made with the officials charged with the duty of constructing the ditch, undertook and agreed to construct that part of it extending across its grounds and right of way, and thereafter to keep such part in repair; that appellee did construct such part of the ditch, but did the work in a negligent and improper manner, and that thereafter appellee negligently placed large rocks and other obstructions in the ditch just west of the opening of the arch, whereby on March 7, 1907, at a time of freshet, the waters flowing through the arch were obstructed and hurled back, and a whirlpool formed, and that as a result, the retaining wall was undermined and broken loose from the arch, and caused to fall in the ditch, and that thereby the roadway was caused to cave and thereby destroyed, and that appellant was compelled to and did rebuild the wall and repair the highway at an expense of $3,000. It is alleged that the highway "has been at all times maintained and kept in repair by said plaintiff, as it was and is by law required to do".

It appears from the third paragraph of answer that not only the retaining wall, but also a portion of the arch under the highway was destroyed, and that thereby the highway was rendered unfit for travel. There is an averment that "said highway is a county road". It is further averred that the arch has been reconstructed and the highway repaired for public use; that an appropriation to that end having been made by the county council in August, 1908, the board of commissioners adopted plans and specifications, advertised for bids, and thereafter entered into contracts in writing with named persons, by the terms of which the concrete work was to be repaired and rebuilt for the sum of $1,798, and the necessary fill made in the highway for the sum of $364.75, and that the work having been completed and accepted, the entire expense thereof was paid

out of the appropriation by orders drawn on the treasury of the county, based on claims duly filed and allowed. It sufficiently appears from the answer that all the repairs were made by the county, and that the county paid the entire expense thereof, and that the township authorities took no action in the matter and paid no part of the expense. It is alleged that therefore, if there is a right to recover on the facts alleged in the complaint, the cause of action is in Steuben County, and that the county, rather than the township is the real party in interest.

It would seem that the negligent conduct, with the resulting injury averred in the complaint is sufficient upon which to predicate a right to recover. We, therefore, proceed to ascertain whether the cause of action, viewed in the light of the allegations of the answer, is in the township or the county. In their origin, the wall and arch were built as a part of the structure of a public ditch. There is no statute under which a county may be assessed with benefits accruing to a public highway on account of the establishing of public drainage. Such benefits are assessed against the proper township, and are paid by its trustee out of funds belonging to such township. Such has been the statutory rule at least since the enactment of the drainage act of 1885. Acts 1885 p. 129, §9, §4280 Myers 1888, §5630 Burns 1901, §6150 Burns 1914. It follows that any expense incurred by a political corporation based on benefits to said highway resulting from the construction of said ditch and said arch and wall as a part thereof, must be presumed to have been incurred and paid by the township, rather than the county. The original investment then, if made by either of said corporations, was made by the township rather than the county, and the county could not base a right to recover in this action on the fact of such original investment.

It would seem, however, that the mere fact of an investment made would not afford a sufficient basis for a right

to recover here, unless by reason of such investment,
2. the corporation making it acquired a property right in the thing destroyed, and as a consequence incurred a property loss in its destruction. The public improvement contemplated and accomplished in the drainage proceeding was of such a nature as to require a wide and deep ditch through the highway, and a bridge or its equivalent over the ditch in the line of the highway. The ditch structure here as built was of such a nature as to perform both functions. The concrete work of the ditch through the highway when completed became a part not only of the ditch, but also, in a practical sense, of the highway. But, strictly speaking, local political corporations do not have a proprietary interest in public roads. They, as a part of the general system of public highways, belong to the State at large. Even, if it be assumed as argued that the structure destroyed was a bridge, there is nothing to indicate that the watercourse involved forms a part of either a township or a county line, and under such circumstances, there is no statute conferring ownership of such a structure on either the township or the county. As a bridge, and while performing its functions as such, it was a part of a public highway, the ownership of which was in the State. *Karr* v. *Board, etc.* (1908), 170 Ind. 571, 575, 85 N. E. 1; *Cummins* v. *Pence* (1910), 174 Ind. 115, 119, 91 N. E. 529. It follows that if the destruction of the wall and arch resulted in any legal injury to either the township or the county, such injury was not in the nature of a property loss within the strict meaning of such term, and a right to recover here under the facts pleaded could not be predicated by either corporation on such a loss. The law contemplates that all public
3. highways be kept in repair for public use. While as routes for public travel, they are not owned locally, the State in each instance, has charged some governmental subdivision, with the duty of making repairs. This duty to repair being coextensive with the injury rendering the repair

necessary, the technical owner incurs no loss through the mere fact of the injury. But since the duty to repair arises by reason of the injury to or destruction of the thing to be repaired, the fact of such duty establishes the existence of a loss as soon as there has been such injury or destruction. In such cases the duty to repair affords a sufficient basis for a right to recover against the wrongdoer responsible for the injury or destruction. It would, therefore, seem reasonable, *prima facie* at least, that the political corporation charged with the duty of making repairs in any case, should be entitled to recover for the injury rendering such repairs necessary.

At the time when the highway here was damaged, as well as when it was repaired, as alleged, the act of 1905 on the general subject of highways was in force. Under that act, the duty rested on townships through their proper officials to repair ordinary highways. §7760 *et seq.* Burns 1908, Acts 1905 p. 521, §91; but boards of county commissioners, acting as boards of directors to that end, were required to repair all free gravel, macadam and turnpike roads within their respective counties. §7754 *et seq.* Burns 1908, Acts 1907 p. 197, §85. Section 7687 Burns 1908, Acts 1907 p. 374, §39, which also is a part of the act of 1905, *supra,* as amended in 1907, provides in part that whenever in the opinion of the board of commissioners of any county, the public convenience shall require that a bridge upon any highway shall be repaired or built, the board shall cause surveys and estimates therefor to be made and plans and specifications to be prepared, etc. There is a further provision that "If, in the opinion of the board, the estimate therefor shall exceed the ability of the road district in which such bridge is to be built, or repairs to be made, by the application of its ordinary road work and tax, the commissioners may use any appropriation made from the county treasury to build or repair the same." Sections 7691, 7780, 7781, 7778 Burns 1908, Acts 1905 p. 521, §§43,

110, 111, 109, §7779 Burns 1908, Acts 1903 p. 223, also bear
on the same general subject of bridge repair. Section 7691,
*supra,* contains a provision that the board of commissioners
of every county shall cause all bridges therein to be kept
in repair. Section 7780, *supra,* authorizes township trustees
to levy a special tax to be expended for the construction and
repair of bridges and culverts, and for other road purposes.
Section 7778, *supra,* is as follows: "If the township trustee
of the township where any proposed bridge or culvert is
to be located or repaired shall notify the board of com-
missioners of his county of the necessity of such location
or repair, and if in the opinion of the commissioners the
public convenience shall require the building or repairing
thereof, they shall cause surveys and estimates to be made
and provide for the erection of the same: *Provided,* That
if the board of commissioners shall not deem such bridge or
culvert of sufficient importance to justify an appropriation
from the county treasury for the building or repair thereof,
the trustee of the township in which is located such bridge
or culvert may appropriate any part of the road fund in the
township treasury for that purpose, if he shall deem it right
and expedient to do so." In *Board, etc.* v. *Allman* (1895),
142 Ind. 573, 42 N. E. 206, 39 L. R. A. 58, the Supreme
Court in considering the question of the duty of boards
of commissioners of counties and incidentally the duty of
township authorities, relative to the repair of bridges, re-
viewed the statutes bearing on that subject, and arrived at
the conclusion that the primary duty to that end under
the statutes then in force rested upon the township au-
thorities, and that only in special cases as specified in such
decision, were the county authorities either authorized or
empowered to make such repairs. Among other things, the
court said: "It will be seen from an examination of these
sections, which must be construed together, that the power
of the board of commissioners to appropriate the county
funds for the repair of bridges is limited to certain cases.

While the county is required by the eleventh section to cause the bridges in the county to be kept in repair, the expense of the same under section 2, unless too great, must be borne by the road district alone for the reason that the board of commissioners can only make an appropriation out of the county treasury to repair a bridge, in cases where the estimates therefor exceed the ability of the road district, by application of its ordinary road work and tax to perform. If the road district is able, by its ordinary road work and tax, to make the repairs, the board of commissioners have no power to appropriate the county funds to pay for repairing the same." The statutes under which *Board, etc.* v. *Allman, supra,* was decided, in their relation to the question involved here, are the same in substance as those hereinbefore cited and quoted as in force in 1907 and 1908. The same subject was considered again by the Supreme Court in *Karr* v. *Board, etc., supra,* 576. The court there, after stating that bridges on free macadam roads are on the same footing as those on ordinary highways, respecting the duty to build and repair them, uses the following language, literally confined to the subject of bridge building, but just as applicable to the subject of bridge repairing, to wit: "Concerning such bridges, it may be said that it is the intendment of the law that counties shall make an appropriation for the building of those which exceed in cost the ability of the district to pay for, by means available for that purpose, provided the public convenience shall so require; but they have a large, if not uncontrollable, discretion in the premises, and even then their appropriation is in aid of the township."

It thus appears that whenever a bridge is damaged or destroyed, rendering its repair or restoration necessary, the duty to that end may not at once and finally be determined. *Prima facie,* it rests upon the authorities of the township in which the bridge is located. But in each case, the probable or estimated expense of making repairs or of restoring the structure that has been destroyed, may be so great as to

exceed the available means of the local township authorities as finally determined by the board of county commissioners. When such a situation exists and it has been so determined, we think it may be said that such duty so resting *prima facie* upon the township authorities dissolves into the disclosed duty of the county to make such repairs. The nature, extent and estimated cost of the repairs, the utility of the structure to be repaired, and the resources of the township authorities are the elements that eventually fix the responsibility respecting the situation, upon the one or the other of the corporations involved. As all these elements in their relation to any particular work of repair are stable, we think it may be said that after the county authorities by proper steps and from a consideration of such elements have determined to take charge of and perform such work, the duty concerning it rested in fact upon the county rather than the township from the origin of the situation rendering the repair work necessary.

We have thus concluded that in a proceeding such as this, the right of a party plaintiff to recover must be predicated upon a duty to repair the structure that has been damaged. We have determined, as indicated, also where lies such duty in various situations. Proceeding with our discussion, we do not doubt that in case of damage to an ordinary highway, the township is the proper party to recover therefor; or that when the highway injured is a free gravel, macadam or turnpike road, the cause of action is in the county. It has been expressly held that the township may maintain an action to recover damages for the negligent destruction of an ordinary highway, and certain bridges and culverts thereon, and that the cause of action has accrued whenever the injury has been consummated. *Pittsburgh, etc., R. Co. v. Iddings* (1902), 28 Ind. App. 504, 62 N. E. 112. In that case, however, under the facts, the question of the proper plaintiff, as between the township and the county, and as respecting the bridges and

culverts destroyed, was not presented. However, we 6. do not doubt that where there has been a negligent injury to or destruction of a bridge, the township may at once maintain an action to recover damages therefor, provided there has been no prior determination that the duty to make repairs or to restore, rests upon the county. It may maintain such action by reason of its *prima facie* or presumptive duty to make repairs. But if there has been a prior determination that such duty does not rest on the township, a material support to such cause of action in the township has failed.

In the case at bar, it does not clearly appear whether the highway involved is an ordinary road or a free gravel, macadam or turnpike road. The only allegations on 7. that subject are as hereinbefore set out. Moreover, it is apparent that the structure destroyed at least bears some resemblance to a bridge. For the purposes of this case, we do not find it necessary to determine in fact the exact nature of the highway or of the structure destroyed. There is nothing to indicate that the township at any time took any steps looking to the repair of the injury. After about eighteen months had elapsed, the county commissioners assumed charge of the work, and caused the repairs to be made, and the expense thereof to be paid out of funds of the county appropriated to that end. More than a year and a half after the work had been completed and paid for, the township brought this action. No one here questions the right of the county commissioners to do the work. The parties at least impliedly must be held to an admission of such right; the township by failing to take action on its own account; appellee, in that it procured a favorable decision from the trial court that the county rather than the township is the proper party plaintiff to the cause of action, the facts of which are averred in the complaint, and in that it seeks in this court to uphold such favorable decision of the trial court. Under such circumstances, we

indulge the presumption that the county commissioners in causing such repairs to be made and paid for were acting in harmony with their duty in the premises, having regard to the nature of the work to be done.     Being thus led to hold that the duty to make the repairs here rested upon the county commissioners, it follows that the board of county commissioners of Steuben County, rather than appellant is the real party in interest to recover on the cause of action, the facts respecting the body of which are alleged in the complaint.     We therefore hold that the court did not err in its ruling on the demurrer to the answer.

Judgment affirmed. ·

NOTE.—Reported in 108 N. E. 545.     See, also, under (1) 14 Cyc. 1060;     (3) 37 Cyc. 252, 226;     (4) 5 Cyc. 1078;     (5) 37 Cyc. 252; (6, 7) 5 Cyc. 1116.